# Exhibit 9

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

IN RE:

AIR CRASH INTO THE JAVA SEA
ON JANUARY 9, 2021

MDL No. 1:23MD3072

ILLINOIS PLAINTIFFS CONSOLIDATED REPLY TO BOEINGS' OPPOSITIONS

TO REMAND (Dkts. 38-44.)

I.   Introduction

All Illinois plaintiffs want their cases remanded and took appropriate steps to move the court for relief.  Boeing in error now claims Illinois plaintiffs waived their jurisdictional and save-to-suitor arguments.[1]  Illinois plaintiffs timely, factually, and legally invoked rights and objections.[2]

There has been no consent to or waiver as to jurisdiction.[3] Boeing asserted that it was a citizen of Virginia without informing Illinois plaintiffs of material facts that placed that assertion

---

[1] Dkt. 38, p. 5; Dkt. 39, p. 5.

[2] *In re Air Crash Into Java Sea on January 9, 2021*, --- F.Supp.3d ----, 2023 WL 2876934 *2 (M.D.L. April 7, 2023)("The actions also share **significant threshold questions concerning**…whether admiralty or diversity jurisdiction lies over the actions…")(emphasis added.)  Boeing never mentioned waiver to the MDL panel.  When the MDL panel transferred this case, it did so with the expectation that all jurisdiction arguments would be heard by a single court.

[3] Dkt. 38, p. 3-4; Dkt. 39, p. 3-6.

1

into dispute.[4]  Boeing is at odds with "fundamental principle of our jurisprudence" that "seeks the discovery of truth by means of a managed adversarial relationship between the parties."[5]

Boeing is using its claimed principal place of business as a means of procedurally creating division and entanglement among the plaintiffs towards a common end: dismissal on *Forum Non-Conveniens* (FNC) grounds.[6]  Boeing's request that the Court find some Illinois plaintiffs objection to jurisdiction as untimely, a request not made as to other Illinois plaintiffs is yet another example of its strategy.[7]

Boeing's "Stalingrad defense"[8] should give this Court pause. The SJY-182's suits filed in Illinois seek to hold Boeing accountable for a product that has caused significant loss of life and raises important safety questions over a mechanism currently in place in planes flying on American soil. The SJY-182 suits raise common questions of law and fact like the 737 MAX litigation: whether Boeing an American company with international presence is

---

[4] Dkt. 20, Exhibit A to X.

[5] *MercExchange, L.L.C. v. eBay, Inc.*, 467 F.Supp.2d 608, 617 (E.D.Va.2006); Dkt. 44, p. 2 ("In their supplemental memorandum, the Illinois Plaintiffs request jurisdictional discovery.")  This statement omits a material fact that jurisdictional discovery was requested since January 20, 2023, "Plaintiffs request that the Court grant them permission to conduct discovery to establish that Boeing was not a citizen of Virginia on October 13, 2022 when it filed its notice of removal." *Aprillia et al. v. Boeing*, No. 22-CV-05609, Northern District of Illinois, Dkt. 25, p. 9.

[6] Dkt. 30 at 1. ("These cases present a textbook example of a lawsuit warranting forum non conveniens dismissal.") They are not.

[7] Dkt. 39, p. 3-6.

[8] *Safer Display Tech., Ltd. v. Tatung Co.*, 227 F.R.D. 435, 442 (E.D.Va.2004) (Doumar, J.)

2

introducing a product into commerce that is defectively designed, manufactured, and modified in America.[9] Boeing's attempt to side-step inquiry on that issue is not new.[10]

Though the 737-Max cases involved Boeing's MCAS system whereas SJY-182 involves Boeing's auto-throttle system, Boeing's motive, intent, absence of mistake, and knowledge regarding both the MCAS system, the auto-throttle system, and its product generally are relevant as other act evidence in this case.[11] 737-Max, Lion Air crashed on October 29, 2018. 737-Max, Ethiopian Airlines crashed on March 10, 2019. On January 7, 2021, Boeing was indicted for the 737-Max crashes and entered into a deferred prosecution agreement with the Department of Justice.  Two days later, SJY-182 crashed.

To protect the plaintiffs' selected forum, promote judicial efficiency, and protect international principles of comity, the Court "not only has a right but a duty to inquire *sua sponte* into whether subject matter jurisdiction exists if the basis of such jurisdiction appears questionable as it does in this case."[12]

---

[9] *In re: Ethiopian Airlines Flight ET 302 Crash*, No. 19 C 2170 (Consolidated), 2023 WL3728625 (N.D. Il. May 30, 2023); *United States v. Boeing Co.*, 4:21-CR-5-O, 2022 WL 13829875, at *6 (N.D. Tex. Oct. 21, 2022).

[10] Gelles, David, *Boeing Aims To Move Victim Lawsuits Abroad, but C.E.O. Says He Is Unaware*, The New York Times, November 10, 2019 available at https://www.nytimes.com/2019/11/10/business/boeing-lion-air-lawsuits-indonesia.html (last checked July 28, 2023.)

[11] Federal Rule of Evidence 404(b).

[12] *Craighead v. Nissan Motor Acceptance Corp.*, No. 1:10-cv-981 (JCC/JFA), 2010 WL 5178831, at *6 (E. D. Va. Dec. 14, 2010) (citing *Roche v. Lincoln Prop. Co.*, 373 F.3d 610, 621 (4th Cir. 2004), rev'd on other grounds by *Lincoln Property Co. v. Roche*, 546 U.S. 81 (2005) ("Because the parties may not waive or consent to federal subject matter jurisdiction-indeed we must raise it sua sponte if jurisdiction appears questionable[.]")

Boeing cannot demonstrate by a "preponderance of evidence" that there is federal jurisdiction over these cases.[13]   To the extent Boeings' declarations suggest otherwise, they are disputed and discovery is requested.   All Illinois plaintiffs respectfully ask that the Court return these cases back to state court in Illinois where SJY-182 cases are pending.

## II.   Boeing's principal place of business was in Illinois when Illinois plaintiffs' actions commenced.[14]

In the interests of judicial economy and international comity, and pursuant to binding precedent, because some SJY-182 cases will be heard in Illinois state court, that court should hear all Illinois cases.

Boeing's principal place of business was in Illinois as of May 17, 2022.[15] With the exception of a quarterly report filed on June 30, 2022, the first date mentioned in Boeing's declaration on this point is August 16, 2022.   Boeing identifies in its declaration June 30, 2022 as the earliest date its citizenship was

---

[13]*Scott v. Cricket Commc'ns, LLC*, 865 F.3d 189, 194 (4th Cir. 2017); *Roche*, 373 F.3d at 616-617.

[14] In support of this section and in reply to Boeing's oppositions, plaintiffs have attached the declaration of an investigator named Brett Starr marked in sequence as Exhibit Y. Dkt. 20.

His declaration is supported by extensive research material. That material is not attached to the declaration out of courtesy to those individuals identified even though the material would not be subject to seal or redaction. *See* F.R.C.P 5.2, LCR 5 and 7(C).   The documents will be given to Boeing. LCR 5(G).   If Boeing contests their authenticity or accuracy, plaintiffs will file them with the Court as "provided by law" and "Court rule." LCR 5(A).

[15] Dkt. 20-5, Ex. E.

based in Virginia.  The evidence demonstrates that Boeing remained a citizen of Illinois when Illinois actions commenced.

When Boeing filed its Stock-Corporation, Annual Report with the Commonwealth of Virginia's State Corporation Commission on May 17, 2022, the document was filed and signed by its president and CEO, Mr. David Calhoun.[16]

The steps taken to file the report require reflection and deliberation.[17]  The reporter is required by law to identify the corporation's "directors," "principal officers" including their "post office addresses,"[18] and when an officer signs the form:[19]

> The undersigned affirms that the information contained in this electronic submission is accurate and complete and that the undersigned is legally authorized to sign the document. The undersigned acknowledges that it is unlawful to sign a document that is false in any material respect with the intent that it be delivered to the Commission for filing.

Many individuals identified in Boeing's declaration were not identified by Mr. Calhoun as officers or directors pursuant to Virginia law in the May 17, 2022 report.[20] It follows that those individuals identified in Boeing's declaration not listed in the

---

[16] Id.

[17] Ex. Z (State Corporation Commission – File an Annual Report in the Clerk's Information System).

[18] Code of Virginia § 13.1-775(A)(3).

[19] Ex. Z, p. 2; *see also Trace Mountain Prods., Inc. v. Special Data, Inc.*, 1994 WL 1031414(Va. Cir. Ct. Nov.3, 1994)("the annual report…was filed with the State Corporation Commission as required by law listing…directors and officers of that corporation, which report was filed under the oath of [the signatory]…")

[20] Dkt. 42, p. 8-10.

report were not directors or officers of Boeing on or about May 17, 2022.

In Virginia, "[a]ll corporate powers shall be exercised by or under the authority of the board of directors, and the business and affairs of the corporation managed under the direction, and subject to the oversight, of the board of directors…"[21] Acknowledging the board's broad powers, the declarant states that Boeing's operations are "…subject to the direction of Boeing's senior executive leadership and oversight of Boeing's Board of Directors."[22] That acknowledgement finds support in Boeing's Certificate of Incorporation:[23]

> (b) The business of the Corporation shall be managed by its Board of Directors, and the Board of Directors shall have power to exercise all the powers of the Corporation, including (but without limiting the generality hereof) the power to create mortgages upon the whole or any part of the property of the Corporation, real or personal, without any action of or by the stockholders, except as otherwise provided by statute or by the By-Laws.

---

[21] VA Code Ann. § 13.1-673(B); *Sfreddo v. Sfreddo*, 59 Va. App. 471, 481-482 (2012)(The "intent of the board of directors is necessarily the intent of the corporation," the board of directors have the "widest powers" under Virginia law). The current board exercised their wide powers when they recently refused to payout a bonus to Boeing's CEO. Tangel, Andrew, *Boeing Board Denies CEO David Calhoun a Performance Bonus*, The Wall Street Journal, March 3, 2023 available at https://www.wsj.com/articles/boeing-board-denies-ceo-david-calhoun-a-performance-bonus-3a3a6c74 (last checked July 24, 2023.

[22] Dkt. 42, p. 5.

[23] The Boeing Company, Amended and Restated Certificate of Incorporation, p. 4, available at https://www.boeing.com/resources/boeingdotcom/company/general_info/pdf/certificate_incorporation.pdf (last checked July 28, 2023.)

Mr. Calhoun identified as directors: himself; Robert Bradway; Susan Schwab; Ronald A Williams; Arthur D Collins; Edmund P Giambastiani; Lawrence Kellner; Lynn Good; Caroline Kennedy; John M. Richardson; Steven M. Moellenkopf; Akhil Johri; and listed everyone's post office address in Chicago, Illinois.[24]

Mr. Calhoun separately identified the following corporate officers: Natalie N. Rorem (assistant treasurer); Grant M. Dixton (secretary); David A. Dohnalek (treasurer) and listed everyone's post office address in Chicago, Illinois.[25] Boeing admits Mr. Dohnalek worked and resided in Chicago and public records demonstrate that Ms. Rorem is currently located in Chicago.[26]

Mr. Starr's research confirms that Mr. Calhoun, Mr. Bradway, Mr. Collins, Mr. Williams, Ms. Schwab, Mr. Collins, Mr. Giambastani, Ms. Rorem, Mr. Dixton, Mr. Dohnalek are not residents of Virginia and do not have associations with the state of Virginia.[27]

Boeing's declarant corroborates Mr. Starr's research stating that Mr. Calhoun's "primary residence is in New Hampshire."[28] The declarant further confirms that Mr. Dohnalek was the treasurer, resided and maintained an office in Illinois.[29] That corroboration bolsters Mr. Starr's overall research.

---

[24] Id.

[25] Id.

[26] Dkt. 20-24, Ex. X at 3.

[27] Ex. Y, p. 8.

[28] Hamoudi Declaration.

[29] Dkt. 42, p. 10-11.

Separately, Mr. Kellner's location is listed in Austin, Texas.[30] Ms. Good was located in Charlotte, North Carolina.[31] Mr. Moellenkopf was located in San Diego, California in 2022.[32]

Per Mr. Calhoun's affirmation, all the individuals legally identified as directors and officers who owe fiduciary obligations to shareholders maintained their Boeing offices in Chicago, Illinois on or about May 17, 2022, including himself.[33]

Boeing's declarant states that the directors held a virtual meeting on August 29-30, 2022, a meeting in Arlington, Virginia on October 17-18, 2022, then a meeting in St. Louis on December 8-9, 2022, but does not reveal if they made or discussed "significant corporate decisions" and "corporate policy,"[34] *Central West Virginia Energy Co., Inc. v. Mountain State Carbon, LLC.*, 636 F.3d 101, 107 (4th Cir. 2011.), or attended "executive retreat[s]." *Hertz Corp. v. Friend,* 559 U.S. 77, 97 (2010). Since Mr. Calhoun is a director, he attended both meetings, he has that information. A deposition would aid the Court in clearing up this ambiguity.

These meetings in different locations supports plaintiffs' position that Boeing was in the process of transitioning its principal place of business from Illinois to Virginia throughout 2022 into early 2023 but had not finalized the move.

---

[30] https://en.wikipedia.org/wiki/Larry_Kellner ("He resides in Austin, Texas.)(last checked July 23, 2023).

[31] https://www.duke-energy.com/our-company/about-us/leadership/lynn-j-good ("She and her husband, Brian, live in Charlotte.")(last checked July 23, 2023).

[32] Ex. AA, Moellenkopf Information.

[33] *Adelman v. Conotti Corporation*, 215 Va. 782, 790, 213 S.E.2d 774, 779 (1975)(stating that directors owe fiduciary obligations under Virginia law.)

[34] Ex. 42, p. 3-4.

That it was affirmed by Boeing's CEO and director that all these directors and officers including himself maintained offices in Chicago and as plaintiffs have demonstrated that they lived outside of Virginia further reinforces plaintiffs' position.

But there is more. Boeing then filed an additional report with the state of Virginia in December 2022 like the one Mr. Calhoun filed in May 2022. The December 2022 form affirmed a significant change while leaving intact Mr. Calhoun's earlier affirmation that all directors and officers maintained a post office box in Chicago.[35]

Ms. Rorem changed[36] the principal office from Virginia to Delaware on December 1, 2022.[37] The amendment circumstantially demonstrates that the transition was not complete and indicates that Mr. Calhoun's earlier affirmation may have been premature.

The timing of the change is circumstantially significant for another reason. Some Illinois plaintiffs had filed remand motions on October 7, 2022, prior to December 1, 2022 disputing Boeing's claim that it had moved to Virginia.[38] It is reasonable to infer that Boeing amended the report because it faced the prospect of having their CEO's earlier affirmation in May 2022 scrutinized. The board may have instructed Ms. Rorem to amend the report.

---

[35] Dkt. 20, Ex N. Ms. Norem also filed and signed a subsequent report on March 10, 2023 but was identified as President and Assistant Treasurer. Id., See Ex. T.

[36] It is reasonable to infer that Ms. Rorem filed amended report since this was the second report filed in 2022, and only one report is required annually under the law. VA Code Ann. § 13.1-775(A);(C).

[37] Dkt. 20, Ex N.

[38] *Wadu et al. v. Boeing*, No. 1-22-04896, Dkt. 14 (Motion to Remand, October 7, 2022).

Deposition and discovery will aid the Court in addressing these issues.

There is even more. Boeing first announced its plan to move to Virginia on May 5, 2022.[39] Mr. Calhoun affirmed on May 17, 2022, that they had moved to Virginia. No company, let alone a company the size of Boeing can magically transform its principal place of business within 12 days. That Boeing fails to provide evidentiary facts disputing plaintiffs' evidence that Mr. Calhoun was announcing policy to Boeing's employees from Chicago, Illinois on July 27, 2022, October 26, 2022, and January 25, 2023 speaks volumes.[40] In short, he was in Chicago throughout 2022 into early 2023 at Boeing's principal place of business making announcing policy.

Separately, Ms. Rorem, like Mr. Calhoun, identified: Edmund P Giambastiani; Arthur D Collins; Ronald A Williams; and Susan Schwab as directors listing their addresses in Chicago, Illinois.[41] It continues to follow that those individuals identified in Boeing's declaration not listed in the report were not directors or officers of Boeing on or about December 1, 2022.

As explained above, all the directors and officers in the December 1, 2022 report live and work outside of Virginia per Mr. Starr's declaration.[42]

Ms. Rorem's affirmation that all these individuals maintained an office in Chicago, Illinois shows that Mr. Calhoun's earlier affirmation, on that point, was no oversight. Both her

---

[39] Dkt. 42, fn. 2 ("Boeing Plans to Move Headquarters to Arlington, Virginia.")

[40] Dkt. 20-7, Ex. G, Dkt. 20-12, Ex. L, Dkt. 20-19, Ex. S.

[41] Id.

[42] Ex. Y, p. 8.

affirmations and Mr. Calhoun's affirmation were made subject to Virginia law, by two individuals who have deep insight as to the innerworkings of Boeing's corporate structure, and because of that, their affirmations should resolve this matter in favor of Illinois' plaintiffs' position.

> The undersigned affirms that the information contained in this electronic submission is accurate and complete and that the undersigned is legally authorized to sign the document. The undersigned acknowledges that it is unlawful to sign a document that is false in any material respect with the intent that it be delivered to the Commission for filing.

Boeing's declarant was not present at the Board meetings where these decisions were made. Ms. Rorem has unique insight since she is also Vice President of Boeing Aerospace.[43]  She filed another report for Boeing Aerospace in March 2023 affirming that Chicago is Boeing Aerospace's "principal office."

For Boeing Aerospace, she identifies as officers Gregory Vogelsperger (secretary), Laura Howley (treasurer), and Tim Buerk (president) with all of them located in Illinois.  As of March 18, 2023, Mr. Vogelsperger[44] was Chief Counsel, Corporate Finance and Governance for Boeing, in Chicago, Illinois where he was charged with making high level legal, finance, and governance decisions on behalf of the company, the type of decisions made at a company's principal place of business.

There is more evidence. Boeing's declarant is in Chicago where she currently keeps and maintains Boeing's corporate records lending further support that Boeing's principal place of business

---

[43] Dkt. 20, Ex. U.

[44] Mr. Vogelsperger provided a declaration in some of the Illinois cases. *Handayani v. Boeing*, No. 23-CV-00371, Dkt. 17-1. The declaration speaks to Boeing's principal place of business as of January 5, 2023.

located in Illinois.[45] The reason Boeing's Corporate records are in Chicago is because Chicago is its principal place of business:[46]

> (a) The books of the Corporation may be kept outside the State of Delaware at such place or places as may from time to time be designated by the Board of Directors.

Faced with overwhelming evidence, Boeing points to its media representations. Boeing's representations in the media and on its website claiming that Virginia was the corporation's "headquarters" are not probative because "[self-serving] materials [like articles and website postings], ... do not convert [Virginia] into the place where the corporations high level officers direct, control, and coordinate the corporation's activities." *Carbon* at 105 n.2 (quoting *Hertz*, 559 U.S. at 80) (quotations omitted). These representations reflect a reality in corporate or brand imaging—that a company's desire to create a particular perception outpaces reality.

For example, Boeing's declarant states "Boeing currently employs approximately 500 people," in Arlington, Virginia.[47] On May 29, 2022, the Virginia Business, a local publication, reported that "Boeing already employs 400 people at its 4.7-acre campus in Arlington's Crystal City — near Amazon.com Inc.'s HQ2 and Virginia Tech's Innovation Campus."[48] By its own admissions, to date, a

---

[45] DKt. 42, p. 1; *see also Brown v. PracticeLink, Ltd., 2017 Fair Empl. Prac. Cas*. (BNA) 434099, 2017 WL 6029630, *4 (S.D. W. Va. 2017)(concluding in part that citizenship was in St. Louis because corporate records were kept and maintained there.)

[46] See Footnote 23.

[47] Dkt. 42, p. 3.

[48] Andrews, Kate, *Boeing will move global HQ to Arlington*, Virginia Business, May 29, 2022 available at https://www.virginiabusiness.com/article/boeing-will-move-global-hq-to-arlington/ (last checked July 26, 2023.)

company with more than "141,500 employees" has managed to move roughly a 100 people to its new principal place of business since May of last year.  But the declaration fails to state how many employees worked in Arlington when these actions commenced months ago.  Considering the two annual reports filed by Boeing in the state of Virginia in 2022 that list all post office addresses for directors and officers in Illinois, it is reasonable to conclude that no one or maybe a handful moved there in 2022 from Chicago.

The declarant states "[t]he matters stated here are based on my review of Boeing's corporate records, work product generated by Boeing employees based on those corporate records, and/or my personal knowledge," but does not identify the records or work product so that they can be adequately confronted in a reply.[49]

In contrast, plaintiffs will disclose to the defendant  the information underlying their declaration. This is why discovery is necessary so that documents are produced in an orderly fashion. For example, Boeing cited its 10-Q report in support of its position that they were in Virginia but did not provide the entire report to the Court. Plaintiffs provided the document in its entirety then identified factual issues. Dkt. 19, p. 3. Without discovery, plaintiffs are left with having to scour public records.

Public records show its principal place of business was in Chicago, Illinois at the end of 2022.  In its 2022, proxy statement, Boeing directs shareholders to send proposals and nominations for directors to Chicago, Illinois all the way into January 29, 2023.[50]

---

[49] Dkt. 42, p. 1.

[50] Boeing, 2022 Annual Meeting of the Shareholders, April 29, 2022 available at https://s2.q4cdn.com/661678649/files/doc_financials/2021/ar/Boeing-2022-Proxy-Statement.pdf (last checked July 26, 2023.)

## The 2023 Annual Meeting

### Proposals for Inclusion in 2023 Proxy Statement

If you wish to submit a proposal for inclusion in our 2023 proxy statement, you must follow the procedures set forth in Rule 14a-8 of the Securities Exchange Act of 1934. To be eligible for inclusion, we must receive your proposal at the address below no later than Friday, November 11, 2022.

### Director Nominations for Inclusion in 2023 Proxy Statement (Proxy Access)

Subject to certain requirements, our By-Laws permit a shareholder, or a group of up to 20 shareholders, that has owned at least 3% of our outstanding common stock for at least three years to nominate and include in our annual meeting proxy materials directors constituting the greater of two individuals and 20% of the Board. Any such nomination must be received at the address below no earlier than the close of business on Wednesday, October 12, 2022 and no later than Friday, November 11, 2022. Any such notice must meet the other requirements set forth in our By-Laws, which are publicly available on our website.

### Other Proposals or Nominations

Our By-Laws require that we receive advance written notice for any shareholder proposal or director nomination that is not submitted for inclusion in our proxy statement. Any such proposal or nomination must be received at the address below no earlier than the close of business on Friday, December 30, 2022 and no later than the close of business on Sunday, January 29, 2023. Any such notice must meet the other requirements set forth in our By-Laws, which are publicly available on our website.

### Where to Send All Proposals and Nominations

Office of the Corporate Secretary
The Boeing Company
100 North Riverside Plaza
MC 5003-1001
Chicago, Illinois 60606-1596

Boeing's By-Laws list Arlington as the "Corporation's executive offices," but those By-Laws were "amended and restated" after these suits were filed:[51]

**BY-LAWS**

**OF**

**THE BOEING COMPANY**

(as amended and restated effective April 5, 2023)

Boeing has provided pleadings filed by its attorneys to the Court to demonstrate that Boeing's principal place of business was in Virginia when these actions commenced to counter pleadings provided by Illinois plaintiffs that stated otherwise. An attorney's assertion in a pleading does not establish Boeing's principal place of business because, "[t]he parties'

---

[51] Dkt. 42. Fn. 5.

characterization of themselves or their claims is not determinative for federal jurisdiction purposes."[52]

Plaintiffs brought those pleadings to the Court's attention to demonstrate factually "that Boeing had not completed its transition from Illinois to Virginia."[53] The attorneys that now state they made a mistake do not disclose the factual basis that changed their position.[54] They may have waived the underlying work product supporting the claimed mistakes.[55] That work product would include the correspondences sent and received between Boeing and these attorneys regarding the issue. Boeing does not provide a declaration confirming that it has corresponded with all agents advocating its interests in courts to determine if others made "mistakes."

Though it is not their burden, Plaintiffs have clearly shown that Boeing's principal place of business was in Illinois when these actions commenced. Stated differently, Boeing cannot plausibly demonstrate by a preponderance of the evidence that its principal place of business was not in Illinois when these actions commenced.

The Court should resolve this issue in plaintiff's favor because of that failure. If not and to the extent Boeing's

---

[52] *Gen. Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 118 (4th Cir. 2004) (quoting *Roche v. Lincoln Prop. Co.*, 373 F.3d 610, 615-16 (4th Cir. 2004)).

[53] Dkt. 19, p. 5.

[54] Dkts. 40, 43.

[55] *U.S. v. Caldwell*, 7 F.4th 191, 207 (4th Cir. 2021) (when an attorney freely and voluntarily discloses the contents of otherwise protected work product to someone with interests adverse to his or those of the client, he may be deemed to have waived work product protection.)

declarations suggest otherwise, plaintiffs dispute all declarations filed by Boeing with this Court and filed in Illinois. Further, plaintiffs renew their request for discovery.

Plaintiffs request that Boeing answer the interrogatories it previously agreed to answer.[56] Plaintiffs request an opportunity to depose Mr. Calhoun and Ms. Rorem given their affirmations to the state of Virginia's Corporation Commission regarding Boeing's principal place of business and the location of its officers and directors. Finally, plaintiffs request an opportunity to depose Boeing's declarants and request the opportunity to review the documents they have relied on including documents favorable to plaintiffs that have been withheld.

### III. The forum defendant rule applies to Illinois plaintiffs.

Illinois plaintiffs adopt the Virginia plaintiffs' arguments that the forum defendant rule applies, Boeing's snap removal was improper, and that Boeing was properly joined and served.[57] For the reasons set out by Virginia plaintiffs, the forum defendant rule applies to the Illinois plaintiffs because at the time their actions commenced, they properly joined and served Boeing in its home forum.

### IV. There is no admiralty jurisdiction.

Boeing states that it is "irrelevant" that plaintiffs allege in their complaints that the tort occurred over land.[58] This

---

[56] Dkt. 34-1, p. 16.

[57] *Kastenbaum et al. v. Boeing*, No. 1:23-cv-00044-CMH-WEF, Dkt. 24, p. 15-20; Dkt. 14, p. 14-21.

[58] Dkt. 38, p. 14, Dkt. 39, p. 16 *compare with* Dkt. 20, Ex. H, ("the autothrottle failed within minutes after the accident aircraft departed the runway and while it was over land."); Ex. K ("the auto-throttle failed within minutes after the accident aircraft departed the runway and while it was over land."); Ex. Q

circuit, however, clearly finds it relevant.[59] Boeing admits that the product, plaintiffs' claim was designed negligently, was designed, and built on land.[60] The alleged tort does not pose any "risk to a variety of activities essential to maritime commerce."[61] And a domestic passenger flight bound from Jakarta International Airport to Supadio International Airport in Pontianak, Indonesia does not show a "substantial relationship" to traditional maritime activity.[62] That the two airports were separated by water presents "too attenuated a relationship to traditional maritime activity."[63]

While it is true that SJY 182 ultimately crashed into the water, the focus is not where the tortuous harm ended but when "the alleged negligence became operative while the aircraft was on or over navigable waters."[64] The rule makes sense otherwise

---

("while it was flying over land."); Ex. R ("the autothrottle failed within minutes after the accident aircraft departed the runway and while the aircraft was over land.").

[59] *Mayor & City Council of Baltimore v. BP P.L.C.*, 31 F.4th 178, 226-228 (4th Cir. 2022) ("BP P.L.C.")

[60] Dkt. 15, p. 9-10 ("The SJY 182 aircraft was assembled in the State of Washington, which is also where most of Boeing's design work for the 737-500 aircraft and its Cruise Thrust Split Monitor ("CTSM") took place. Boeing's activities in connection with the design, manufacture, assembly, testing, and certification of Boeing 737-500 model aircraft, the CTSM, and the manuals for the accident aircraft were based predominantly in the State of Washington.")

[61] *White v. U.S.,* 53 F.3d 43, 47 (4th Cir. 1995.)

[62] *Id.*

[63] *Id.*

[64] *Compare Executive Jet* 409 U.S. 249, 264 (1972); *and Executive Jet Aviation, Inc. v. City of Cleveland*, 448 F.2d 151, 154 (6th Cir. 1971) ("the alleged tort in this case occurred on land before the aircraft reached Lake Erie…") *with Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995)("The place

17

admiralty jurisdiction in cases involving the same alleged tort would lie simply if the plane crashed in water as opposed to land creating an absurd disparity where some freak events are subject to admiralty jurisdiction whereas others are not even if the tortuous conduct originated on land in the United States decades earlier. "It was manufactured in 1994 and initially delivered to Continental Airlines on May 31, 1994, in Washington state." Dkt. 15, p. 2.

Finally, Illinois plaintiffs have not waived their right to invoke common-law remedies in state court. Dkt. 19, p. 11-12. This is another attempt by Boeing to create procedural disparity between the plaintiffs.

**V.  Conclusion**

Plaintiffs respectfully ask that the Court remand these cases for the reasons set out in all their pleadings filed in this Court and in Illinois federal court.

As the Honorable Robert Dow concluded, federal jurisdiction does not lie over some Illinois plaintiffs' actions.[65] Though his decision's precedential value is limited to some of its facts, it has a great deal of value for purposes of judicial economy and international comity.

To maintain congruity between similarly situated plaintiffs already in state court in Illinois, the Court should respectfully remand these cases. Boeing will not suffer prejudice because it can raise its "textbook"' case for FNC in Illinois state court

---

in the river where the barge sat, and from which workers directed the crane [the tort arose], is in the 'navigable waters of the United States.'") and *Lu Junhong v. Boeing*, 792 F.3d 805 (7th Cir. 2015)(wrong occurring while the aircraft was over the ocean).

[65] *Riyanto v. Boeing*, No. 21-1475, 2022 WL 16635556 (N.D. Ill. Nov. 2, 2022) (Riyanto I).

where its Chief Legal Counsel and all its corporate records are currently located.[66] Indeed, Boeing prefers to be in Illinois state even though its preference is federal court.[67]

Dated: July 28, 2023.              Respectfully submitted,

                                   By: */s/ Mohammad Hamoudi*
                                            By Counsel
                                   Charles Herrmann (WA Bar No. 6173)
                                   Anthony Marsh (WA Bar No. 45194)
                                   Mohammad Hamoudi (WA Bar No. 48512,
                                   CA Bar No. 273104)
                                   Pro Hac Vice
                                   HERRMANN LAW GROUP
                                   505 5th Avenue South, Suite 330
                                   Seattle, WA 98104
                                   (206) 625-9104



                                   By: */s/ Thomas Patrick Routh*
                                            By Counsel
                                   Thomas Patrick Routh
                                   Nolan Law Group
                                   20 N Clark St 30th Floor
                                   Chicago, Illinois 60602-5094
                                   (312) 630-4000

---

[66] *Vivas v. Boeing Co.*, 392 Ill. App. 3d 644, 657, 331 Ill.Dec. 827, 911 N.E.2d 1057 (2009); *Milton v. The Boeing Company*, 2023 IL App (1st) 220647 (Ill. App. February 3, 2023); *Arik v. Boeing Co.*, No. 1-10-0750, 2011 IL App (1st) 100750-U, at *2-3 (Ill. App. Ct. Jan. 10, 2012).

[67] Ex. BB ("The reason we've argued in favor of the Northern District of Illinois is that that's where the first filed cases are. That's where the majority of the decedents are represented. There's only six unique decedents in the Eastern District of Virginia, and the evidence with respect to Boeing's activities would primarily come out of Washington state because the aircraft would have been designed and manufactured there.")

By:  */s/ Floyd Wisner*
          By Counsel
Floyd A. Wisner
Alexandra Wisner
Wisner Law Firm
161 N. Clark Street Suite 1600
Chicago, Illinois 60601
(312) 216-5168


By:  */s/ Sanjiv N. Singh*
          By Counsel
Sanjiv N. Singh
Sanjiv N. Singh, A Professional Law
Corporation
1700 S. El Camino Real Suite 503
San Mateo, CA 94402
(650) 389-2255


By:  */s/ Michael B. Indrajana*
          By Counsel
Michael B. Indrajana
Indrajana Law Group, A Professional
Law Corporation
1700 S. El Camino Real Suite 503
San Mateo, CA 94402
(650) 597-0928


By:  */s/ Vincent C. Mancini*
          By Counsel
Vincent C. Mancini
Reimer Dobrovolny & La Bardi PC
15 Spinning Wheel Road
Suite 310
Hinsdale, IL 60521
(630) 654-9547

20

Exhibit Y

**Declaration of Brett Starr**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| IN RE: | |
| | |
| AIR CRASH INTO THE JAVA SEA | MDL No. 1:23MD3072 |
| ON JANUARY 9, 2021 | |

### DECLARATION OF BRETT K. STARR

Pursuant to 28 U.S.C.§ 1746, I hereby declare as follows:

I, Brett K. Starr, being duly sworn under oath and state that I am a citizen of the United States and the State of Illinois, over 21 years of age, not a party to this case, and in no way interested therein and under penalty of perjury further state as follows:

1.     I am Vice President of Jack Burke & Associates, Ltd. an Illinois licensed Private Detective Agency, license number 117-000786, (hereinafter, "Burke"). I have been employed as a private investigator for over twenty-five years and have conducted thousands of investigations for purposes including identifying public records and commercial database background, due diligence, and skip tracing difficult to locate defendants and witnesses.

2.     I have personal knowledge of the investigative research performed by Burke and the facts set forth in this declaration and can testify competently thereto.

3.     Burke was retained by Carmen D. Caruso of Carmen D. Caruso Law Firm on July 20, 2023, to conduct investigative research in an effort to establish the state of residence of The Boeing Company officers and directors as listed in The Boeing Company Annual Report dated December 1, 2022, and filed in the Commonwealth of Virginia. Burke was provided with this above-referenced document listing by Carmen D. Caruso.

4.     On July 24, 2023, through July 26, 2023, I conducted subscription-based commercial database searches including credit header data and motor vehicle registrations; public records searches; driver's license record searches; and publications, deep web, and social media

1

searches regarding the below named officers and directors. I identified the following summarized data regarding The Boeing Company officers and directors as of the Commonwealth of Virginia Annual Report dated December 1, 2022:

Edmund P. Giambastiani, Jr. is a resident of Jupiter, Florida in Palm Beach County based on research which identified that his most recent commercial database and credit header address association is in Florida and that he maintains an unexpired Florida driver's license, is registered to vote in the state of Florida, co-owns his Florida principal residence with his spouse which has a Palm Beach County Property Tax homestead exemption, and he has registered/co-registered and titled two motor vehicles in the state of Florida. Additionally, Mr. Giambastiani also owns a residence in Chevy Chase, Maryland in Montgomery County which is co-deeded to him with his spouse since 2017. The 2022 and 2023 Montgomery County Property Tax bills indicate that this is not a principal residence and a 2020 Deed of Trust recorded in Montgomery County, Maryland identified the property as a second home via rider. No LinkedIn profiled was identified for Mr. Giambastiani. To prepare this summary, I utilized standard investigative techniques and searches common in my industry including obtaining identifiers, credit header address associations, and motor vehicle data from subscription based commercial databases TLO, IRB, and iDi Core and, in addition, collected certain public records and publications documents relevant to Mr. Giambasitani, Jr. I have provided true and correct copies of the documents supporting my factual summary in this paragraph, which I can authenticate, to Counsel. I await further instructions from the Court (through Counsel).

Arthur D. Collins, Jr. is a resident of Naples, Florida in Collier County based on research which identified that his most recent commercial database and credit header address association is in Florida and that he maintains an unexpired Florida driver's license, is registered to vote in the state of Florida, is the Trustee of a Revocable Trust to which his

Florida principal residence is deeded and that has a Collier County Property Tax homestead exemption and he has a motor vehicle registered and titled to him at his principal residence in the state of Florida. Commercial database and credit header data also identified an additional apartment unit in Chicago, Illinois located in Cook County. In addition, Mr. Collins' LinkedIn profile page identifies Mr. Collins' location as Naples, Florida and current position with an entity located in Chicago, Illinois. To prepare this summary, I utilized standard investigative techniques and searches common in my industry including obtaining identifiers, credit header address associations, and motor vehicle data from subscription based commercial databases TLO, IRB, and iDi Core and, in addition, collected certain public records and publications documents relevant to Mr. Collins, Jr. I have provided true and correct copies of the documents supporting my factual summary in this paragraph, which I can authenticate, to Counsel. I await further instructions from the Court (through Counsel).  In addition, Mo Hamoudi (one of the Plaintiffs' attorneys), provided me with additional documents about Mr. Collins. The documentation provided by Mo Hamoudi does not change my summary stated above, and I can provide these documents to the Court upon the Court's request to Counsel.

Ronald A. Williams is a resident of Delray Beach, Florida in Palm Beach County based on research which identified that his most recent commercial database and credit header address association is in Florida and that he maintains an unexpired Florida driver's license, is registered to vote in the state of Florida, co-owns his Florida principal residence with his spouse which has a Palm Beach County Property Tax homestead exemption, and he has registered/co-registered and titled four motor vehicles at his principal residence in the state of Florida. In addition, Mr. Williams' LinkedIn profile page identifies Mr. Williams' location as Boca Raton, Florida.  To prepare this summary, I utilized standard investigative techniques and searches common in my industry including obtaining identifiers, credit header address associations, and motor vehicle data from subscription based commercial

3

databases TLO, IRB, and iDi Core and, in addition, collected certain public records and publications documents relevant to Mr. Williams. I have provided true and correct copies of the documents supporting my factual summary in this paragraph, which I can authenticate, to Counsel. I await further instructions from the Court (through Counsel). In addition, Mo Hamoudi (one of the Plaintiffs' attorneys), provided me with additional documents about Mr. Williams. The documentation provided by Mo Hamoudi does not change my summary stated above, and I can provide these documents to the Court upon the Court's request to Counsel.

Susan C. Schwab is a resident of Annapolis, Maryland in Anne Arundel County based on research which identified that her most recent commercial database and credit header address association is in Maryland and that she maintains an unexpired Maryland driver's license, is registered to vote in the state of Maryland, owns her Maryland principal residence which has an Anne Arundel County Property Tax homestead exemption and has a motor vehicle registered and titled to her at her principal residence in the state of Maryland. In addition, the Ms. Schwab's LinkedIn profile page identifies Ms. Rorem's location as Annapolis, Maryland. To prepare this summary, I utilized standard investigative techniques and searches common in my industry including obtaining identifiers, credit header address associations, and motor vehicle data from subscription based commercial databases TLO, IRB, and iDi Core and, in addition, collected certain public records and publications documents relevant to Ms. Schwab. I have provided true and correct copies of the documents supporting my factual summary in this paragraph, which I can authenticate, to Counsel. I await further instructions from the Court (through Counsel). In addition, Mo Hamoudi (one of the Plaintiffs' attorneys), provided me with additional documents about Ms. Schwab. The documentation provided by Mo Hamoudi does not change my summary stated above, and I can provide these documents to the Court upon the Court's request to Counsel.

4

David L. Calhoun is a resident of Sunapee, New Hampshire in Sullivan County based on research which identified that his most recent commercial database and credit header address associations including a United States Post Office Box are in New Hampshire and that he is registered to vote in the state of New Hampshire and historic publications identifying his philanthropy identify him of Sunapee, New Hampshire. Mr. Calhoun's principal residence in New Hampshire has been deeded since 2007 in the name of Camp David LLC, a Connecticut domestic and New Hampshire foreign entity with his spouse listed in corporate records as the LLC Manager. An additional nearby property on the same street in Sunapee, New Hampshire is deeded to an additional New Hampshire LLC with Mr. Calhoun's spouse identified from New Hampshire Secretary of State records as the LLC Manager. An additional condominium property in Chicago, Illinois in Cook County was deeded to Mr. Calhoun and his spouse on June 13, 2020, and was identified in a 2020 mortgage as a second home. No pending sale or for sale listing was identified for this Illinois property. No LinkedIn profile page was identified for Mr. Calhoun. It should be noted that current New Hampshire vehicle registrations and titles are not available or permissible via commercial database search nor are New Hampshire Driver's license numbers which would be required to obtain a New Hampshire driving record and the status of a New Hampshire Driver's License. In addition, no recent Driver's License issuance was identified in other states. To prepare this summary, I utilized standard investigative techniques and searches common in my industry including obtaining identifiers, credit header address associations, and motor vehicle data from subscription based commercial databases TLO, IRB, and iDi Core and, in addition, collected certain public records and publications documents relevant to Mr. Calhoun. I have provided true and correct copies of the documents supporting my factual summary in this paragraph, which I can authenticate, to Counsel. I await further instructions from the Court (through Counsel).

<u>David A. Dohnalek</u> is a resident of Lake Forest, Illinois in Lake County based on research which identified that his most recent commercial database and credit header address association is in Illinois and that he maintains an unexpired Illinois driver's license, is registered to vote in the state of Illinois, his Illinois principal residence was placed into a Trust in his spouse's name in 2020 and continues to have a Cook County Property Tax homestead exemption and he has three motor vehicles co-registered and titled to him at his principal residence in the state of Illinois. In addition, the attached LinkedIn profile page identified Mr. Dohnalek's location as the Greater Chicago area. To prepare this summary, I utilized standard investigative techniques and searches common in my industry including obtaining identifiers, credit header address associations, and motor vehicle data from subscription based commercial databases TLO, IRB, and iDi Core and, in addition, collected certain public records and publications documents relevant to Mr. Dohnalek. I have provided true and correct copies of the documents supporting my factual summary in this paragraph, which I can authenticate, to Counsel. I await further instructions from the Court (through Counsel).

<u>Grant M. Dixton</u> is a resident of Pacific Palisades, California in Los Angeles County based on research which identified that his most recent commercial database and credit header address association is in California and that that he maintains an unexpired California driver's license and is registered to vote in the state of California. Los Angeles County, California deed records for Mr. Dixton's principal residence identified a May 15, 2022, recordation of a deed transfer from Grant M. Dixton and his spouse to the Dixton Community Property Trust but the above searches identified that Mr. Dixton's principal residence remained this same property in Los Angeles County, California. In addition, the Mr. Dixton's LinkedIn profile page identifies Mr. Dixton's location as Santa Monica, California. It should be noted that California vehicle registrations and titles are not available or permissible via commercial database search and publicly available property

6

tax bills do not identify the taxpayer of record in the state. To prepare this summary, I utilized standard investigative techniques and searches common in my industry including obtaining identifiers, credit header address associations, and motor vehicle data from subscription based commercial databases TLO, IRB, and iDi Core and, in addition, collected certain public records and publications documents relevant to Mr. Dixton. I have provided true and correct copies of the documents supporting my factual summary in this paragraph, which I can authenticate, to Counsel. I await further instructions from the Court (through Counsel). In addition, Mo Hamoudi (one of the Plaintiffs' attorneys), provided me with additional documents about Mr. Dixton. The documentation provided by Mo Hamoudi does not change my summary stated above, and I can provide these documents to the Court upon the Court's request to Counsel.

Natalie N. Rorem is a resident of Park Ridge, Illinois in Cook County based on research which identified that her most recent commercial database and credit header address association is in Illinois and that that she maintains an unexpired Illinois driver's license, is registered to vote in the state of Illinois, co-owns an Illinois principal residence with her spouse which has a Cook County Property Tax homestead exemption and has two motor vehicles co-registered and titled to her at her principal residence in the state of Illinois. In addition, the attached LinkedIn profile page identified Ms. Rorem's location as the Greater Chicago area. To prepare this summary, I utilized standard investigative techniques and searches common in my industry including obtaining identifiers, credit header address associations, and motor vehicle data from subscription based commercial databases TLO, IRB, and iDi Core and, in addition, collected certain public records and publications documents relevant to Ms. Rorem. I have provided true and correct copies of the documents supporting my factual summary in this paragraph, which I can authenticate, to Counsel. I await further instructions from the Court (through Counsel).

<u>Robert A. Bradway</u> is a resident of Thousand Oaks, California in Ventura County based on research which identified that his most recent commercial database and credit header address association is in California and that that he maintains an unexpired California driver's license and is registered to vote in the state of California. Ventura County, California deed records for Mr. Bradway's principal residence identified a December 23, 2019, recordation of a deed transfer from the 2011 Bradway Trust to the La Concordia Trust but the above searches identified that Mr. Bradway's principal residence remained this same property in Ventura County, California. In addition, Mr. Bradway's LinkedIn profile page identifies Mr. Bradway's location as Ventura County, California. It should be noted that California vehicle registrations and titles are not available or permissible via commercial database search and publicly available property tax bills do not identify the taxpayer of record in the state. To prepare this summary, I utilized standard investigative techniques and searches common in my industry including obtaining identifiers, credit header address associations, and motor vehicle data from subscription based commercial databases TLO, IRB, and iDi Core and, in addition, collected certain public records and publications documents relevant to Mr. Bradway. I have provided true and correct copies of the documents supporting my factual summary in this paragraph, which I can authenticate, to Counsel. I await further instructions from the Court (through Counsel). In addition, Mo Hamoudi (one of the Plaintiffs' attorneys), provided me with additional documents about Mr. Bradway. The documentation provided by Mo Hamoudi does not change my summary stated above, and I can provide these documents to the Court upon the Court's request to Counsel.

5.      Reasonable diligent efforts to identify the state of residence of The Boeing Company officers and directors as listed in their last known filed Virginia Annual Report were performed and no officers or directors listed were identified as residents of the state of Virginia and commercial database address associations were not identified in Virginia from 2022 to present.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: 7-27-2023

Brett K. Starr
Jack Burke & Associates, Ltd.
917 W. Washington Blvd. #223
Chicago, IL 60607

9

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

Alexandria Division

| IN RE: | |
|---|---|
| AIR CRASH INTO THE JAVA SEA ON JANUARY 9, 2021 | MDL No. 1:23MD3072 |

## DECLARATION OF MOHAMMAD HAMOUDI

I, Mohammad Hamoudi, declare as follows:

1. I am admitted pro hac vice as counsel on this matter.

2. I have been tasked with coordinating and filing pleadings on behalf of Illinois counsel.

3. Exhibit Z is a true and correct copy of a document I obtained from the Virginia State Corporate Commission's website.

4. Exhibit AA is a true and correct copy of a LinkedIn page that I obtained from the internet.

5. Exhibit BB is a true and correct copy of transcript from the MDL hearing which my office obtained at my direction.

6. I reviewed websites, cited those websites in our reply, and the information provided in our reply is true and accurate at the times I reviewed those websites:

   a. Gelles, David, *Boeing Aims To Move Victim Lawsuits Abroad, but C.E.O. Says He Is Unaware*, The New York Times, November 10, 2019 available at https://www.nytimes.com/2019/11/10/business/boeing-lion-air-lawsuits-indonesia.html (last checked July 28, 2023.)

1

b. Tangel, Andrew, *Boeing Board Denies CEO David Calhoun a Performance Bonus*, The Wall Street Journal, March 3, 2023 available at https://www.wsj.com/articles/boeing-board-denies-ceo-david-calhoun-a-performance-bonus-3a3a6c74 (last checked July 24, 2023.

c. The Boeing Company, Amended and Restated Certificate of Incorporation, p. 4, available at https://www.boeing.com/resources/boeingdotcom/company/general_info/pdf/certificate_incorporation.pdf (last checked July 28, 2023.)

d. https://en.wikipedia.org/wiki/Larry_Kellner ("He resides in Austin, Texas.)(last checked July 23, 2023).

e. https://www.duke-energy.com/our-company/about-us/leadership/lynn-j-good ("She and her husband, Brian, live in Charlotte.")(last checked July 23, 2023).

f. Andrews, Kate, *Boeing will move global HQ to Arlington*, Virginia Business, May 29, 2022 available at ht0tps://www.virginiabusiness.com/article/boeing-will-move-global-hq-to-arlington/ (last checked July 26, 2023.)

g. Boeing, 2022 Annual Meeting of the Shareholders, April 29, 2022 available at https://s2.q4cdn.com/661678649/files/doc_financials/2021/ar/Boeing-2022-Proxy-Statement.pdf (last checked July 26, 2023.)

DECLARED UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES AND WASHINGTON STATE, DATED this 28th day of July 2023 at Seattle, Washington.

By: */s/ Mohammad Hamoudi*
By Counsel

# Exhibit Z

**Virginia State Corporation Commission – How to File a Report**



# File an Annual Report in the Clerk's Information System

Each Virginia corporation and foreign corporation authorized to do business in Virginia must file an Annual Report with the Office of the Clerk every year. The report is due annually by the last day of the 12th month after the entity was incorporated or issued a certificate of authority. This how-to guide will walk you through filing an Annual Report in the new Clerk's Information System (CIS) https://cis.scc.virginia.gov/.

You will need to determine if you are filing an Annual Report with no changes or if you need to file it with changes.

## File an Annual Report with No Changes

**1** Log on to CIS at https://cis.scc.virginia.gov/.
*Note: Google Chrome, Internet Explorer or Microsoft Edge are recommended.*

**2** Click **Online Services** on the top left.

**3** Under Business Entities, click **Annual Reports (Corporations)**.

**4** Select **With no changes** from the drop-down.

**5** Click **Continue** in the bottom right.



**6** Enter either the **Entity Name** or the SCC **Entity ID** number and click **Search**.

**7** Select the radio button to the left of your business.

*Note: Clicking the entity name will open your business information in a new tab.*

**8** Click **Continue**.



**9** Review the **Entity Information** and click **Next**.

Review the **Principal Office Address** and click **Next**.

Review the **Principal Information** and click **Next**.



**10** Enter the **Signature Information**. You must complete all fields with an asterisk (*):
    **Signing as**
    **Signature**
    **Title**
*Note: Though there is no asterisk, the **Printed Name** section must match the **Signature** field.*

**11** Click the **Add** button to add the signature to the Annual Report.

**12** Click the **OK** button.

**13** Click the **Next** button.



**14** Click the **Add To Shopping Cart** button on the bottom right.

*Note: There is no charge to file an Annual Report.*



**15** A confirmation of successful submission will appear.



## File an Annual Report with Changes

**1** Log on to CIS at https://cis.scc.virginia.gov/.
*Note: Google Chrome, Internet Explorer or Microsoft Edge are recommended.*

**2** Click **Online Services** on the top left.

**3** Under Business Entities, click **Annual Reports (Corporations)**.



**4** Select **With changes** from the drop-down.

**5** Click **Continue** in the bottom right.

**6** Enter either the **Entity Name** or the SCC **Entity ID** number and click **Search**.



**7** Select the radio button to the left of your business.

*Note: Clicking the entity name will open your business information in a new tab.*

**8** Click **Continue**.



**9** Review the **Entity Information**. If needed, update the **Entity Email Address** and/or the **Contact Number**.

**10** Click **Next**.

**11** Review the **Principal Office Address** and update if needed. You must complete all fields with an asterisk (*):

**Address Line 1**  **City/County**
**Country**  **State**
**ZIP Code**

**12** Click **Next**.

**13** Review current **Principal Information**.

**14** Check the **No Officers** and/or **No Directors** box(es) if needed.

**15** Add principal director(s) and/or officer(s) as needed.
Complete all fields with an asterisk (*):

| | |
|---|---|
| **Title** | **Country** |
| **First Name** | **Zip Code** |
| **Last Name** | **City/Town** |
| **Address Line 1** | **State** |

**16** If you added anyone, click **Add Principal**.

**17** Click **Next**.



**18** Enter the **Signature Information**. You must complete all fields with an asterisk (*):

**Signing as**
**Signature**
**Title**

*Note: Though there is no asterisk, the **Printed Name** section must match the **Signature** field.*

**19** Click the **Add** button to add the signature to the Annual Report.

**20** Click the **OK** button.

**21** Click the **Next** button.



**22** Click the **Add To Shopping Cart** button on the bottom right.

*Note: There is no charge to file an Annual Report.*

**23** A confirmation of successful submission will appear.



# Exhibit AA

**Steven Moellekopf – LinkedIn**

 

Home   My Network   Jobs   Messaging   Notifications   Me ▾   For Business ▾   Reactiv
Premium



## Steve Mollenkopf · 3rd

Former Chief Executive Officer at Qualcomm Incorporated

University of Michigan

San Diego, California, United States · Contact info

143 connections

Follow    More

---

## Activity

1,466 followers

**Steve hasn't posted yet**

Recent posts Steve shares will be displayed here.

Show all activity →

---

## Experience

 **Chief Executive Officer**
Qualcomm · Full-time
Mar 2014 - Jun 2021 · 7 yrs 4 mos
San Diego, California, United States

Retired

 **Qualcomm**
6 yrs 1 mo

**Chief Operating Officer and President**
2011 - 2014 · 3 yrs

**Executive Vice President and President of QCT**
2008 - 2011 · 3 yrs

**Executive Vice President, QCT Product Management**
2008 · Less than a year

---

## Education

 **University of Michigan**
Master of Science (M.S.), Electrical Engineering

 **Virginia Tech**
Bachelor of Science (B.S.), Electrical Engineering

---

Exhibit BB

**MDL Hearing Transcript**

UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION
_____

In re: Air Crash Into the Java Sea          MDL No. 3072
On January 9, 2021                          March 30, 2023
_____         10:32 a.m.


TRANSCRIPT OF ORAL ARGUMENT

Chair:                          Honorable Karen K. Caldwell
                                United States District Court
                                Eastern District of Kentucky

Members:                        Honorable Nathaniel M. Gorton
                                United States District Court
                                District of Massachusetts

                                Honorable Matthew F. Kennelly
                                United States District Court
                                Northern District of Illinois

                                Honorable David C. Norton
                                United States District Court
                                District of South Carolina

                                Honorable Roger T. Benitez
                                United States District Court
                                Southern District of California

                                Honorable Dale A. Kimball
                                United States District Court
                                District of Utah

                                Honorable Madeline Cox Arleo
                                United States District Court
                                District of New Jersey

Official Court Reporter:
Erica R. McQuillen, RDR, CRR
Evo A. DeConcini U.S. Courthouse, Suite 3524
405 West Congress Street
Tucson, Arizona 85716
(520) 205-4267

```
                              A P P E A R A N C E S



        By:      Mack H. Schultz
                 Perkins Coie, LLP
        For:     The Boeing Company



        By:      Pablo Rojas
                 Podhurst Orseck, PA
        For:     Jonathan Kastenbaum, et al.
```

```
 1                    P R O C E E D I N G S

 2           JUDGE CALDWELL:  And last but not least, the Panel

 3   will consider MDL Number 3072, the Air Crash Into the Java

 4   Sea.

 5           Mr. Schultz?

 6           MR. SCHULTZ:  Good morning, Your Honors.  Mack

 7   Schultz with Perkins Coie on behalf of movant The Boeing

 8   Company, which has moved to centralize the cases arising out

 9   of the Sriwijaya accident in the Northern District of

10   Illinois.

11           In terms of development since briefing was closed,

12   not a lot has happened.  There have been four cases in the

13   Northern District of Illinois where the remand briefing has

14   been completed, including a case before Judge Kennelly.

15   Otherwise the briefs encapsulate the status of the case.  And

16   I won't go over the arguments for centralization generally.

17   As the Panel I'm sure is aware, there is a history of

18   centralizing mass commercial aviation accident litigation,

19   which is what Boeing is seeking here.

20           I would, though, like to briefly address the

21   arguments that have been made against centralization, and the

22   primary argument is that remand motions should be decided

23   first.  Notably the plaintiffs in their various briefs cite no

24   authority for that proposition because there is none.  The

25   Panel's prior decisions and the Second Circuit decision In re:
```

 1    Ivy have made it clear that MDL transfer is appropriate, even

 2    when there are pending motions to remand.

 3         Plaintiffs have pointed to the remand of a very

 4    early Sriwijaya case, Riyanto, as suggesting that it is clear

 5    that the pending actions will also be remanded.  But this --

 6    the Panel in the In re: Eliquis (Apixaban) Litigation and In

 7    re: Payment Card Litigation face the same situation where

 8    people opposing centralization argued that a prior remand

 9    meant that the remand motion should be decided first, and in

10    both of those cases the Panel centralized it.

11         The plaintiffs from the -- the plaintiff from the

12    Eastern District of Virginia also argued that there were not

13    enough cases to centralize, citing cases with either two or

14    three separate actions.  There are 21 different actions in

15    this case, which makes it ripe for centralization, especially

16    given the possibility of further tag-along actions, as not all

17    of the decedents on the aircraft are represented in the

18    litigation.

19         And finally, with respect to common issues, the

20    plaintiff from the Eastern District of Virginia argues that

21    damages issues are individual.  That is typically true, but

22    there are five crossover decedents here represented in both

23    districts.

24         Thank you.

25         JUDGE CALDWELL:  Thank you.

1          Questions?  Judge Kennelly.

2          JUDGE KENNELLY:  So I got two questions.  One of

3     them is about the last thing you mentioned.  How does --

4     what's the story on the people who have dual cases?  Is it --

5     how do representatives get appointed, I guess, in Indonesia or

6     wherever they were appointed?

7          MR. SCHULTZ:  So it might be a question that's

8     easier for Mr. Rojas, as one of the attorneys handling those

9     questions, to answer.  Typically what happens in these mass

10    aviation accidents is that the representatives are sometimes

11    appointed with the help of the plaintiffs' firms in the states

12    where they file.  In the Eastern District of Virginia, it's

13    Mr. Kastenbaum is the representative for all 11 decedents.

14          The five what I've termed crossover decedents,

15    there's three minors and there's two adults in that mix.

16    Sometimes different family members hire different attorneys,

17    and that explains it as well.

18          JUDGE KENNELLY:  Okay.  That's really not that

19    significant a question, I guess.

20          The thing that I'm really curious about here is

21    that, you know, I actually just reread the briefs on the

22    remand motion in the case that's in front of me this morning,

23    and the primary thrust of those briefs on the part of Boeing

24    is that there's nothing left in Chicago except one fairly

25    high-up person in the GC's office, Ms. Amuluru, and everything

1    else is in Virginia.

2            Why the heck are you wanting to centralize these

3    cases in Chicago since you're telling all of these judges that

4    everything has gone to Virginia?

5            MR. SCHULTZ:  So in terms of what's moved to

6    Virginia, it's the higher executive functions.  There is still

7    significant Boeing presence in Chicago.

8            JUDGE KENNELLY:  Yeah, but it doesn't have anything

9    to do with manufacturing processes, does it?

10           MR. SCHULTZ:  Correct.  The reason we've argued in

11   favor of the Northern District of Illinois is that that's

12   where the first filed cases are.  That's where the majority of

13   the decedents are represented.  There's only six unique

14   decedents in the Eastern District of Virginia, and the

15   evidence with respect to Boeing's activities would primarily

16   come out of Washington state because the aircraft would have

17   been designed and manufactured there.

18           JUDGE KENNELLY:  Okay.

19           MR. SCHULTZ:  Some of the support operations are

20   also in California.

21           JUDGE KENNELLY:  Okay.  So let me just kind of get

22   to my real point here, which is, I mean, the whole deal on

23   these cases, they all boil down to who wins the forum non

24   conveniens motion; right?  That's what it boils down to.  Is

25   the law for you better in the Seventh than it is in the

1    Fourth?

2          MR. SCHULTZ:  I would say it's more developed in the

3    Seventh Circuit.  I think we're confident that the law in both

4    Circuits would support dismissal for forum non conveniens on

5    the facts of this case.

6          JUDGE KENNELLY:  Okay.  All right.  Thanks.

7          JUDGE CALDWELL:  Other questions?  Yes, Judge

8    Kimball.

9          JUDGE KIMBALL:  Does Judge Dow's opinion in the

10   Riyanto v. Boeing case have any bearing on this matter, and if

11   so, what?

12         MR. SCHULTZ:  So Judge Dow's opinion in the Riyanto

13   case has, in our opinion, very little effect on the Northern

14   District of Illinois cases because Boeing's principle place of

15   business, its headquarters, moved between when that case was

16   filed and removed and when the pending cases were filed and

17   removed.

18         I know the parties will probably litigate quite

19   vigorously over whether the decision of Judge Dow or the

20   earlier decision in Curry v. Boeing is the proper way to look

21   at the complex intertwining between diversity jurisdiction and

22   admiralty jurisdiction, but I don't want to go too far down

23   that path with this Panel.

24         JUDGE CALDWELL:  Other questions?

25         Hearing none, we thank you for your argument.  You

 1   have a minute reserved for rebuttal.

 2           MR. SCHULTZ:  Thank you, Your Honors.

 3           JUDGE CALDWELL:  Mr. Rojas.

 4           MR. ROJAS:  Thank you, Your Honors, and good

 5   morning.  My name is Pablo Rojas, and I think the easiest way

 6   to explain whom I represent, it's all 11 decedents who are

 7   represented in a personal representative of an estate capacity

 8   by Mr. Kastenbaum, meaning all 11 cases that are currently

 9   pending in the Eastern District of Virginia.

10           And to briefly reiterate our position, we oppose

11   transfer and consolidation under 1407, but if consolidation is

12   going to take place at all in these matters, we would suggest

13   that it be done under Section 1404, and I'll explain why by

14   making three points, in addition to the points already made in

15   our papers, about the multidistrict character of these

16   matters, and they're sort of in descending order of

17   importance, from my point of view.

18           Number one, the multidistrict character of these

19   matters is pretty minimal.  We're talking about cases pending

20   in only two federal district courts.  There are four sets of

21   plaintiff lawyers involved in these cases, formerly five,

22   until the remand motion was granted in the Riyanto matter.

23   And again, our firm represents all the plaintiffs whose cases

24   are pending in Eastern Virginia.

25           Number two, the multidistrict character of this

UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

1    matter is sort of fortuitous, and it's a matter of sort of the

2    timing of Boeing's move from Illinois to Virginia and how that

3    sort of overlaid with the timing of this unfortunate crash and

4    the timing of the filing of the lawsuits.

5              And number three, from our point of view, the

6    multidistrict character of this matter can and should be

7    rendered moot, and that can be -- take place in one of two

8    ways.  One is obviously that all 11 of our cases, our clients,

9    have a pending remand motion in the Eastern District of

10   Virginia, which as Boeing correctly points out in its papers,

11   has now been stayed pending this Panel's decision on Boeing's

12   motion to transfer.

13             But in plain English, at some point or another, some

14   Federal District Court, depending perhaps on the Panel's

15   decision on the motion to transfer, is going to decide this

16   remand motion, and if that remand motion is granted consistent

17   with Judge Dow's granting of the remand motion in the Riyanto

18   case, there will be no more multidistrict character, at least

19   to the pending cases arising from this crash.

20             And to my knowledge, and my friend on the other side

21   can correct me if I'm wrong, there have been no additional

22   cases filed in several months.  These cases represented here

23   in the notice are the pending federal cases arising from this

24   crash.

25             The other way, of course, that the multidistrict --

 1   currently multidistrict character of this matter can be

 2   resolved would be through a Section 1404 transfer.  If there

 3   is going to be transfer and consolidation, we would propose

 4   that it be accomplished through a 1404 transfer, perhaps, of

 5   our cases to the Northern District of Illinois.  Frankly, we

 6   haven't gotten very far in terms of having discussions with

 7   Boeing about that, but we certainly can and would be amenable,

 8   if helpful to the Panel, to provide some kind of status report

 9   in due course.  I understand Boeing's current position in its

10   papers to be that 1404 transfer is sort of inappropriate here

11   and a 1407 transfer is preferred.

12          I would refer to the Panel, I'm sure the Panel's

13   familiar with, obviously, the Panel's prior jurisprudence

14   explaining the advantages from a judicial economy and

15   convenience and other standpoints to 1404 transfer, and so

16   again, if the Panel is inclined to consider consolidating

17   these cases, we see no reason why that can't be accomplished

18   through a 1404 transfer of all 11 of our cases to the Northern

19   District of Illinois.  Otherwise, I think, as should be clear

20   from our papers, we don't oppose, if there is going to be an

21   MDL created, the Northern District of Illinois as a, you know,

22   convenient forum for these cases.

23          Thank you.

24          JUDGE CALDWELL:  Thank you.

25          Questions?  Yes, Judge Kennelly.

```
 1              JUDGE KENNELLY:  Just one.  In the cases that are in

 2    Eastern Virginia right now, I should know this, but I don't,

 3    are the remand motions all in front of one judge, or are they

 4    in front of different judges?

 5              MR. ROJAS:  All in front one judge, Judge Hilton.

 6              JUDGE KENNELLY:  Okay.  Thanks.

 7              JUDGE CALDWELL:  Other questions?

 8              All right.  Do you care to rebut, Mr. Schultz?

 9              MR. ROJAS:  Thank you, Your Honors.

10              MR. SCHULTZ:  Very briefly, Your Honor.

11              JUDGE CALDWELL:  Yes, you may.

12              MR. SCHULTZ:  At the risk of taxing your patience at

13    the end of the hearing, a couple of notes I just want to make

14    in response.  There are actually five sets of plaintiffs'

15    firms.  There is a Riyanto case that has been remanded and a

16    separate Riyanto cases pending in federal court, so there

17    actually are five cases.  The fact that no additional cases

18    have been filed in the last couple of months is not

19    surprising.  In aviation cases, they tend to be filed around

20    the anniversary of the accident in January, so the potential

21    tag-alongs would be more likely to come late this year or the

22    very beginning of next year.

23              And finally, with respect to the 1404 transfer, we

24    just note, again, that we were not even able to get the

25    plaintiffs' firms to agree to an intradistrict reassignment to
```

1    Judge Kness, who has the lowest numbered case in the Northern

2    District of Illinois.  There is not any particular reason to

3    believe that we'll be any more successful with any more

4    complicated attempts to coordinate or to secure transfer of

5    these cases.

6             JUDGE CALDWELL:  Thank you.

7             Questions?

8             JUDGE COX ARLEO:  Question.  Have there been any

9    remand motions filed in Virginia?

10            MR. SCHULTZ:  The remand motions in the Eastern

11   District of Virginia have been filed in all 11 cases.

12   Briefing was completed, and after briefing was completed,

13   shortly before the planned hearing, Judge Hilton granted

14   Boeing's motion to stay.  Those motions and the cases overall

15   are pending the Panel's determination.

16            JUDGE COX ARLEO:  And what was Boeing's position as

17   to jurisdiction in those cases?

18            MR. SCHULTZ:  Boeing's position is that jurisdiction

19   is proper in Federal Court both on preservice removal grounds,

20   which has been approved by all of the Circuits to have

21   considered the issue, as well as on admiralty jurisdiction

22   grounds.

23            JUDGE COX ARLEO:  Same position in Illinois;

24   correct?

25            MR. SCHULTZ:  It's a similar position, except in the

1   Northern District of Illinois, the home forum defendant rule

2   doesn't apply in our view because Boeing's principle place of

3   business is no longer there.  All of the decedents were

4   Indonesian.  Boeing clearly is not Indonesian, so there is

5   diversity of citizenship regardless of where Boeing's

6   principle place of business is held to be.

7          JUDGE COX ARLEO:  Okay.

8          JUDGE KIMBALL:  Your view about 1404 is that it's

9   basically a hopeless quest?

10          MR. SCHULTZ:  I don't know if I'd use those words,

11   Judge Kimball, but I do believe it would be very difficult to

12   get the parties to agree on a single forum.  The facts were

13   all there when everybody filed, and people chose to file in

14   different courts.

15          JUDGE CALDWELL:  Other questions?

16          Hearing none, we thank you for your argument.

17          That concludes arguments on MDL Number 3072 and the

18   Panel's business for the day.

19          We'll be in recess.

20          (Proceedings conclude as to MDL Number 3072 at

21          10:45 a.m.)

22

23

24

25

1                    C E R T I F I C A T E

2

3         I, Erica R. McQuillen, Federal Official Realtime

4    Reporter, in and for the United States District Court for the

5    District of Arizona, do hereby certify that, pursuant to

6    Section 753, Title 28, United States Code, the foregoing is a

7    true and correct transcript of the stenographically reported

8    proceedings held in the above-entitled matter and that the

9    transcript page format is in conformance with the regulations

10   of the Judicial Conference of the United States.

11         Dated this 4th day of April, 2023.

12

13                      s/Erica R. McQuillen
                  Erica R. McQuillen, RDR, CRR
14                Federal Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25